PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOMINICK MARTIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEARCH ROI LLC, a Delaware entity, d/b/a LOANCONNECTPROS.COM<br><br>Defendant. | **Case No. 8:26-cv-00645-MRA-DFM**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL SPAMMING AND INVASION OF PRIVACY** |

## I. NATURE OF ACTION

1. Defendant SEARCH ROI LLC bombards Californians with spam that is both deceptive and literally false. It tricks recipients into mistakenly opening spam emails and clicking on embedded links that take them to LOANCONNECTPROS.COM, where Defendant installs tracking pixels on their devices to secretly surveil them across the internet.

2. The scheme is vile: the initial fraud destroys any semblance of informed consent at the outset. That alone is actionable. But it is the second step that makes the conduct truly evil: once the user is lured onto the website under false pretenses, tracking pixels and similar technologies are silently deployed to harvest data, monitor behavior, and secretly follow the user across the internet without consent.

3. Both the spam and the secret surveillance are illegal under well-established California law.

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff is and was at all times mentioned herein a citizen of the State of California. After receiving the spam attached hereto as **Exhibit "A"** and being deceived into clicking on the link embedded therein, he visited Defendant's website.

5. Search ROI LLC is a Delaware corporation with its principal place of business in Overland Park, Kansas. As such, it is a citizen of both Delaware and Kansas for diversity purposes.

6. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because the members of the Plaintiff class are citizens of different states than Defendant. Indeed, based upon the information available to Plaintiff, the plaintiff class exceeds 10,000 members and the amount in controversy is believed to exceed $100 million.

7. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District – specifically, many class members received the spam and were injured in this District; Defendant advertises its products to residents in this District; and Defendant tracked and surveilled Plaintiff while in California and in this District.

8. Personal jurisdiction over Defendant is reasonable because Defendant maintains an active, ongoing presence in California; advertises its services to California residents; the e-mail at issued was directed to Plaintiff in California; because Defendant tracked Plaintiff in California; and because the claims asserted herein arise directly out of and relate to this California-directed conduct.

## III. FACTUAL ALLEGATIONS

9. Plaintiff is the owner of the California e-mail address dleo2183@gmail.com.

10. Defendant spams Plaintiff and other class members relentlessly. Indeed, in the past 12 months, Plaintiff has received at least a dozen unwanted spam e-mails from Defendant.

11. As just one example, plaintiff recently received a spam e-mail from Defendant that had a forged header, spoofed domain, and deceptive subject line that tricked him into opening the email and clicking on the link therein. The spam is attached hereto as **Exhibit "A".**

12. The preceding is just an example of the spam that Defendant sends to class members. Based on publicly available sources, it is believed that Defendant is responsible for over 100,000 spam e-mails to Californians every year.

13. The spams identified above are "Unsolicited Commercial e-mail advertisements" because plaintiff had no pre-existing relationship with Defendant and because the e-mails were initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. See Bus. & Prof. Code § 17529.1(c).

14. Plaintiff has never given "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents.

15. The spam e-mail attached hereto as Exhibit "A" violates Bus. and Prof. Code § 17529.5(a)(3) because it has a subject line Defendant knows or should know is likely to mislead a reasonable recipient. Specifically, the subject line — **"Personal loans up to $40,000 available Now"** — is materially false in two distinct respects. ***First***, the subject line represents that loans of up to $40,000 are available through Defendant. Yet after clicking the link in the e-mail and navigating Defendant's website, Plaintiff learned that Defendant does not even offer loans, does not loan money, and is not a lender. *See* https://loanconnectpros.com/personal-loan-notice (last accessed June 2026). ***Second***, the entire e-mail is merely a "trojan horse" that is used to obtain contact information for Defendant's real business – selling contact information to third-party marketers. *Id*. Thus, the subject line falsely conveys that Defendant offers access to personal loans of up to $40,000 when, in reality, Defendant is not a lender, does not provide loans, and instead operates as a lead-generation business that monetizes consumers' contact information.

16. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention investigating the misleading offer; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage, and battery life.

17. The unauthorized domain name, misleading headers and literally false subject line also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful email and are redressable by statutory and injunctive relief.

18. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law.

19. Plaintiff has pleaded the alleged fraud and deception with particularity:

a. the **"who"** is Defendant, acting directly and through its marketing agents;

b. The **"what"** consists of the deceptive commercial email attached as Exhibit A, including the false and misleading subject line;

c. The **"when"** is the date reflected in Exhibit A and Defendant's ongoing spam campaign during the applicable limitations period;

d. The **"where"** is Plaintiff's California email account and, following Plaintiff's click-through, Defendant's website;

e. The **"how"** is straightforward: Defendant transmitted a deceptive commercial email that falsely suggested it could provide a loan, when in reality its business is to collect and market contact information. Once Plaintiff arrived at Defendant's website, Defendant deployed tracking technologies that intercepted, collected, and transmitted Plaintiff's information.

20. Going from bad to worse, after luring Plaintiff to its website at **LOANCONNECTPROS.COM** via the above misleading spam, Defendant illegally installed numerous tracking pixels ("Tracking Pixels") on Plaintiff's device that allow various *de facto* data brokers **(including ActiveProspect and Google Analytics)** to (1) intercept communications from Plaintiff and track Plaintiff across the internet and (2) use the information compiled to sell deeply personal details about Plaintiff to the highest bidders. The tracking pixels started gathering data prior to any opportunity to consent.

21. Defendant installed the Tracking Pixels to track signals generated by internet users (thus operating as a "Trap and Trace" device) to compile the dossiers described above and sell the information to the highest bidders. By doing so, Defendant has violated California Penal Code § 638.51.

22. The Tracking Pixels use algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person. Participating websites and apps then cater their advertisements based on a collective knowledge of the user's actions across all of their devices. The Tracking Pixels use data such as cookie IDs, operating system IDs, IP addresses, online registrations, and data from partnering publishers to develop a probability that different devices are shared by the same person.

23. The Tracking Pixels are used for advertising to consumers across devices, where a user is shown an ad on their mobile or tablet device based on websites they visited on a desktop. For example, if an Android phone visits a website shortly after a desktop PC from the same home network, the Tracking Pixels will assess that there is a high probability that the two devices are operated by the same person and will show them similar ads on both devices. The Tracking Pixels also use cross-device analytics for things like location, timing, user behavior, and audience analysis.

24. The Tracking Pixels spyware activities described above are known as "fingerprinting." Put simply, the Tracking Pixels collect as much data as it can about otherwise anonymous visitors to Defendant's website and matches it with existing information that the Tracking Pixels have acquired and accumulated about hundreds of millions of Americans.

25. According to the esteemed Brennan Center for Justice, data brokers are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms…Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government agencies including the FBI and the IRS."). *See* https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last accessed June 2026).

26. The Tracking Pixels tracked and surveilled Plaintiff while she was physically present in California.

## IV. CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on behalf of all persons similarly situated and seeks certification of the following classes:

a. ***California Email Class:*** All California citizens who, during the applicable limitations period, received one or more commercial electronic mail advertisements promoting Defendant's products or services at an electronic mail address associated with a California resident, where Defendant's records, the records of its vendors, or third-party transmission records identify the recipient, sender information, subject line, and date of transmission.

b. ***California Website Tracking Class:*** All California citizens who, during the applicable limitations period, visited LOANCONNECTPROS.COM while physically present in California and whose visit resulted in the collection, transmission, disclosure, sharing, or processing of browser, device, cookie, IP address, communications, interaction, or other user-generated data through one or more tracking pixels, cookies, analytics tools, advertising technologies, session-replay tools, or similar technologies deployed on that website.

28. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

29. Numerosity. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff believes that there are at least 100,000 members of the Class.

30. Typicality. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct described herein.

31. Adequacy of Representation. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

32. Predominance of Common Questions of Law or Fact. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;

b. Whether Defendant secretly tracked visitors to its website by installing pixels from data brokers.

33. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

34. Ascertainability. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

35. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

36. As shown above, the spam violated one or more provisions of Section 17529.5.

37. Defendant is strictly liable for violation of Section 17529.5 for sending spam and is liable in the amount of $1,000 per spam per class member.

38. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

39. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

### SECOND CAUSE OF ACTION

### Violations of the California Trap and Trace Law

### Cal. Penal Code § 638.51

40. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, et. seq.

41. CIPA was enacted to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

42. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing,

addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

43. California Penal Code § 638.51(a) provides that "a person may not install or use…a trap and trace device without first obtaining a court order.…"

44. Defendant uses multiple trap and trace process on the Website by deploying the Tracking Pixels on its Website because they capture routing, addressing and/or other signaling information of website visitors including Plaintiff.

45. Defendant did not obtain consent from Plaintiff or class members before using trap and trace technology to identify users of its Website and has violated section 638.51 and did not obtain a court order to do so.

46. CIPA imposes civil liability and statutory penalties for violations of section 638.51. Cal. Penal Code § 637.2.

## THIRD CAUSE OF ACTION

## California Intrusion Upon Seclusion

47. Defendant intentionally intruded upon the private affairs, concerns, and seclusion of Plaintiff by improperly accessing Plaintiff's personal information and using it for improper purposes, including by partnering with multiple data brokers to sell Plaintiff's and class members' private information to the highest bidder and them with behavioral advertising.

48. Defendant's intrusions upon the private affairs, concerns, and seclusion of Plaintiff and class members has been substantial and would be highly offensive to a reasonable person and constitute an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of website visitors, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, and the penalties imposed by the FTC and other regulatory bodies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representative, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages;

d. For punitive damages;

e. For attorneys' fees and costs as allowed by law; and

f. For any and all other relief at law or equity that may be appropriate.

Dated: June 1, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: /s/ Scott J. Ferrell
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class